FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 05, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BECKY R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:17-CV-05153-JTR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 13, 17. Attorney D. James Tree represents Becky R. (Plaintiff); Special Assistant United States Attorney Martha A. Boden represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

## JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits on May 7, 2013, Tr. 203, alleging disability since October 1, 2004, Tr. 193, due to bipolar disorder, attention deficit hyperactivity disorder, narcolepsy, arthritis, foot injury/problem, and back injury/pain. Tr. 206. The application was denied initially and upon reconsideration. Tr. 81-87, 89-93. Administrative Law Judge (ALJ) Mary Gallagher Dilley held a hearings on July 7, 2015[1] and May 4, 2016 and heard testimony from Plaintiff, medical expert Peter Schosheim, M.D., and vocational expert, Paul Prachyl, Ph.D.[2] Tr. 39-65. At the May 4, 2016 hearing, Plaintiff amended her onset date to September 1, 2010, "for procedural ease." Tr. 42. The ALJ issued an unfavorable decision on June 27, 2016. Tr. 20-33. The Appeals Council denied review on July 24, 2017. Tr. 1-6. The ALJ's June 27, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on September 27, 2017. ECF Nos. 1, 4 .

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 47 years old at the amended date of onset. Tr. 193. At application, she reported that she completed the eleventh grade in 1979. Tr. 207. She reported her work history as a product demonstrator at Costco. *Id*. Plaintiff reported that she stopped working in 2003 due to her conditions. *Id*.

---

[1] The hearing transcript from the July 7, 2015 hearing is absent from the record.

[2] The record also shows that a hearing was scheduled for January 7, 2016, Tr. 137-61, but there is no evidence this hearing was held.

Plaintiff maintained ensured status for Disability Insurance Benefits through September 30, 2010. Tr. 195. Therefore, she must establish disability on or before September 30, 2010 to be eligible for benefits under Title II of the Social Security Act. *See* 20 C.F.R. § 404.315(a)(1).

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of

proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 27, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful from September 1, 2010, her amended date of onset, through September 30, 2010, her date last insured. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments through the date last insured: left ankle degenerative joint disease status post-surgery; depression; and anxiety disorder. Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments through the date last insured. Tr. 24.

At step four, the ALJ assessed Plaintiff's residual function capacity through the date last insured:

> the claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for about two hours and sit for six hours in an eight-hour day with normal breaks. The claimant was limited to pushing and pulling 20

pounds occasionally and 10 pounds frequently. She could never crawl or climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs. The claimant could never balance on the left foot, but could frequently balance on the right foot. She could frequently kneel. The claimant could occasionally crouch and stoop. She needed to avoid all exposure to temperature extremes of cold and heat and hazards such as moving machinery and heights. The claimant could perform simple, routine tasks.

Tr. 26. The ALJ identified Plaintiff's past relevant work as demonstrator and concluded that Plaintiff was not able to perform this past relevant work. Tr. 31.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform through the date last insured, including the jobs of dies loader, final assembler, and patcher. Tr. 32. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from September 1, 2010, through the date last insured, September 30, 2010. Tr. 33.

## ISSUES

This is a difficult case in which Plaintiff is required to establish disability almost three years prior to her filing date to be eligible for benefits. The record provides limited insight into her impairments prior to the September 30, 2010 date last insured. The majority of the evidence appears to address her decision to donate a kidney to her child and her treatment for acute osteoarthritis in her left foot.

The parties' arguments, addressed further below, focus on what impairments the evidence established prior to the September 30, 2010 date last insured. However, there appears to be missing records from multiple providers that could provide additional insight into Plaintiff's impairments and functional abilities in September of 2010. The record shows that several providers were referring her to

specialists and that these specialists were reporting back to these providers, yet the records from the referring providers are absent. In 2009, Plaintiff's primary care provider was listed as Emmanuel Edibiopko, M.D., Tr. 261-62, 265, 272, 490, along with Darian J. VanGorkum, DPM, Tr. 262, 265. Earlier, in 2006, Dr. Cote was listed as her primary care provider. Tr. 460, 465, 468. There is no evidence from these providers throughout the record. Additionally, at application, Plaintiff stated that she had received treatment from Badger Mountain Family Medicine from 2010 to 2013, Dr. Peacock at Columbia Rheumatology in 2012 to 2013, and KGH Physicians Clinic. Tr. 210-13. No evidence from these locations appear in the record. It does appear that some of these records were requested upon initial evaluation of the claim, but it is unclear what response the Commissioner received. Tr. 68-69 (showing records were requested from Columbia Rheumatology and Badger Mountain Family Medicine). At the May 4, 2016 hearing, the ALJ referred to the July 2015 hearing, stating "[t]here are outstanding medical records and we weren't able to proceed." Tr. 41.

This highlights a separate difficulty in this case: an incomplete record before this Court. First, there is evidence of three separate hearings being scheduled in this case: (1) July 7, 2015, Tr. 106; (2) January 7, 2016, Tr. 137-61; and (3) May 4, 2016, Tr. 162. Yet, the ALJ states that only the July 7, 2015 and the May 4, 2016 hearings were held. Tr. 20. More frustrating for the Court, only the May 4, 2016 hearing transcript is in the record. Tr. 39-65. Therefore, without the transcript of the July 7, 2015 hearing, there is no way of knowing what evidence the ALJ had intended to gather.

The questions presented by Plaintiff appears to overlook the missing medical records and the missing hearing transcripts. Plaintiff contends the ALJ erred by (1) failing to find her bilateral hand arthritis severe at step two, (2) failing to properly weigh the medical opinions of her treating providers, and (3) failing to properly address her symptoms statements. However, the Court finds overcoming the lack

of evidence and incomplete record as a major challenge in addressing Plaintiff's arguments.

## DISCUSSION[3]

**1. Step Two**

Plaintiff argues that the ALJ erred in failing to find the arthritis in both hands as a severe impairment. ECF No. 13 at 6-13.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted). A medically determinable impairment must be established with objective medical evidence; a claimant's statements alone will not suffice. *See* 20 C.F.R. § 404.1521.

The ALJ found that current evidence showed the existence of bilateral hand arthritis, but that the impairment was not medically determinable on or before the date last insured. Tr. 24. In doing so, the ALJ addressed three specific citations to

---

[3]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

the record: (1) A January 18, 2011 treatment note in which Plaintiff presented with bandages on the fingers of both hands and one hand had a swollen and discolored small finger related to a recent fall, Tr. 504; (2) A March 30, 2011 treatment note describing Plaintiff as having more arthritic changes in her hands, Tr. 507; and (3) A November 19, 2014 report showing Plaintiff had arthritis affecting both her hands and the examination showed moderate swelling of the joints of both hands, Tr. 376.

The ALJ appears to overlook a potentially alarming rheumatological trifecta concerning Plaintiff: (1) she had a history of inflammation severe enough to be treated with prednisone, Tr. 454 (a May 2, 2007 note in which she reported she had been diagnosed with "chronic inflammation" and had taken prednisone as treatment); (2) she was suffering from degenerative osteoarthritis in at least one of her peripheral joints prior to the date last insured, Tr. 262 (osteoarthritis in the left foot); and (3) she was precluded from taking anti-inflammatory medication, Tr. 448-49 (Plaintiff donated a kidney to her son in 2007 and was instructed to avoid long term use of anti-inflammatory medication). This coupled with Plaintiff's allegations of arthritis symptoms in her hands prior to her date last insured, Tr. 53, should have triggered the ALJ's duty to develop the record and work on gathering the missing treatment notes from her primary care physicians, a podiatrist, and a rheumatologist from 2006 through 2013.

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288. Despite the ALJ's duty to develop the record, it remains the claimant's burden to prove that she is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). "An ALJ's duty to develop the record . . . is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Webb*, 433 F.3d at 687 ("The ALJ's duty to supplement a

claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate[,] or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."). An ALJ may fulfill her duty to develop the record by continuing the hearing, or keeping the record open after the hearing to allow supplementation of the records. *Smolen*, 80 F.3d at 1288.

Here, the record is ambiguous as to the existence of arthritis in Plaintiff's hands prior to the date last insured. As discussed above, there is evidence of a history of inflammation prior to the date last insured and complaints involving her hands shortly after the date last insured. Even the first diagnosis of hand arthritis in the record, dated November of 2014, actually refers to a previous diagnosis: "She has been diagnosed with OA affecting the hands." Tr. 376. Additionally, the ALJ was aware of the outstanding evidence as it was referred in the materials Plaintiff provided upon application and referenced in the medical evidence. Thus, the ALJ's duty to develop the record was triggered. There is an argument that the ALJ fulfilled her duty by continuing the July 7, 2015 hearing to allow for additional evidence to be gathered. *See* Tr. 41. However, without the transcript of the July 7, 2015 hearing, this Court cannot make such a determination.

Defendant argues that the ALJ's step two determination was legally sufficient as she relied on the statements of Dr. Schosheim. ECF No. 17 at 7-8. In her step two analysis, the ALJ stated "[c]onsistent with the opinion of Dr. Schosheim, the undersigned finds. . . hand arthritis [was] not [a] medically determinable impairments on or before the date the claimant's insured status expired." Tr. 24. However, a review of Dr. Schosheim's testimony shows a very limited consideration of the record. Upon cross examination, he clearly indicated that he was only considering evidence of Plaintiff's impairments from September 1, 2010 to September 30, 2010. Tr. 48-50. When Plaintiff's counsel inquired about evidence prior to September 1, 2010 he rejected it because it was before the onset date. Tr. 49-50. When asked about evidence in the months following

September 30, 2010, he rejected it because it was after the date last insured. Tr. 49. The ALJ's reliance on the opinion which only took into account a month of evidence is in sharp contrast with the Ninth Circuit's approach to the treatment of evidence in establishing the existence of an impairment prior to the date last insured, which has consistently been that "reports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *see also Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir. 1996); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1228-29 (9th Cir. 2010); *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014).

In conclusion, the ALJ's step two determination finding there was no evidence that Plaintiff's bilateral hand arthritis was present prior to the date last insured cannot stand in the face of the absent medical evidence and the incomplete record before the Court. Therefore, the case is remanded for the ALJ to properly and fully develop the record by gathering evidence from the locations listed above and supplementing the administrative record with the transcript from the July 7, 2015 hearing and any evidence establishing that the January 2016 hearing was either held or continued.

**2.  Opinion Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the opinions expressed by Plaintiff's treating rheumatologist, Sean LaSalle, M.D., and treating mental health counselor, Carole Siefken, ARNP. ECF No. 13 at 13-18.

For all cases filed prior to March 27, 2017, acceptable medical sources included providers who had attained a M.D., but not nurse practitioners. 20 C.F.R. § 404.1502(a). In weighing opinions from acceptable medical sources, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

In contrast, an ALJ is only required to give "germane" reasons to discount evidence from "other sources," including the opinions of a nurse practitioner. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.   **Sean LaSalle, M.D.**

Dr. La Salle, a rheumatologist, began treating Plaintiff in January of 2015. Tr. 304. On April 3, 2015, he completed a Medical Report form opining, among other limitations, that Plaintiff's bilateral hand arthritis had not only been present, but had precluded her from handling bilaterally since January of 2010, "per patient report." Tr. 304-05. The ALJ gave "no weight" to this opinion because (1) "records in evidence do not establish that the claimant had osteoarthritis on or before the date her insured status expired," (2) his diagnoses included

fibromyalgia, which was not a medically determinable impairment on or before Plaintiff's date last insured, and (3) the opinion was based on Plaintiff's self-reports. Tr. 30.

Once again, the Court has difficulty addressing the ALJ's reasons with potentially such a large number of records being absent. Due to the ALJ's failure to develop the record, the rejection of Dr. LaSalle's opinion cannot be upheld. Once the missing medical evidence has been associated with the record, the ALJ will readdress Dr. LaSalle's opinion.

### B. Carole Siefken, ARNP

Nurse Siefken completed mental residual functional capacity forms on March 20, 2014, Tr. 292-94, and February 10, 2015, Tr. 298-301. The ALJ assigned both opinions "little weight" because (1) Nurse Siefken did not provide any rationale or cite any evidence to support her opinions, (2) the opinions were based on the Plaintiff's medical issues, but there was no evidence Nurse Siefken completed any physical examinations, and (3) Nurse Siefken provided the opinions as to Plaintiff's current functioning and the Plaintiff was required to establish disability on or before September 30, 2010. Tr. 30-31.

The ALJ is accurate that these opinions only address Plaintiff's functional abilities as of 2014 and 2015. Considering the ALJ was only held to the lower standard of "germane reasons," the ALJ did not error in her treatment of Nurse Siefken's opinions. That being said, the ALJ's assessment of the opinions may change with additional evidence being added to the record. Therefore, the ALJ will address all functional opinions upon remand after the supplementing the record with the missing evidence.

### 2. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were not supported by the medical evidence and other evidence in the record. ECF No. 13 at 18-21.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

In making her determination, the ALJ summarized Plaintiff's testimony at the first hearing and the second hearing in separate paragraphs. Tr. 26-27. The ALJ then found that Plaintiff's medically determinable impairments could be expected to cause her alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 27. The ALJ reasoned that Plaintiff's symptom statements were unreliable because (1) they were not supported by the medical evidence, (2) she failed to follow prescribed treatment, and (3) she did not seek out mental health treatment. Tr. 27-29.

Considering the transcript from the first hearing is not in the record, it is difficult for the Court to assess whether or not the ALJ's reasons for rejecting Plaintiff's testimony at that hearing meet the necessary standard. Upon remand, the ALJ will supplement the record with the transcript from the July 7, 2015 hearing.

As for the ALJ's reasons for rejecting the testimony from the May 4, 2016 hearing, the ALJ failed to meet the necessary specific, clear and convincing standard. First, the ALJ found that Plaintiff's symptom statements were not supported by the medical evidence. Tr. 27-28. An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting

the claimant's testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Here, the ALJ summarized the hearing testimony, asserted it was not supported by the medical evidence, and then summarized the medical evidence. *Id.* In doing so, the ALJ failed to state which specific medical records undermined which specific allegation by Plaintiff. *See Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). In only one of the findings did the ALJ connect Plaintiff's testimony to the medical evidence demonstrating inconsistency. The ALJ found that "[w]hile the claimant testified that she did not recall breaking her cast by walking on it, the medical records show she was casted three separate times in February 2010 because she broke the cast walking on it, which was against medical advice (1F14-16)." Tr. 27. This reason meets the specificity requirement addressed in *Lester*, but because the ALJ failed to provide other legally sufficient reasons for rejecting Plaintiff's symptom statements, this reason alone cannot support her determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," but it cannot serve as the sole reason for rejecting a claimant's credibility.).

  The ALJ's second reason for rejecting Plaintiff's testimony was merely a reference to Plaintiff's failure to continue her physical therapy and not a specific finding. *See* Tr. 28. The ALJ's inference consisted of just two sentences. The first stated that Rodney Graves, DPM "gave the claimant a walking boot and a physical therapy referral." Tr. 27-28. Then the ALJ stated that Plaintiff "only went to physical therapy for an initial evaluation." Tr. 28. Nowhere did the ALJ actually find that a failure to complete physical therapy underscored Plaintiff's symptoms. Therefore, this inference lacks the specificity required of specific, clear and convincing. *See Garrison v. Colvin*, 759 F.3d 1014, 1021 (9th Cir. 2014)

(*quoting Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) ("The clear and convincing standard is the most demanding required in Social Security cases.")).

The final reason provided by the ALJ for rejecting Plaintiff's statements, that she only sought mental health treatment three times in 2010, fails to meet the specific, clear and convincing standard. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment casts doubt on a claimant's subjective complaints. 20 C.F.R. § 404.1530; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ found that Plaintiff's testimony that she had missed work due to her depression, was inconsistent with only three counseling sessions she attended in 2010. Tr. 29. In coming to this conclusion, the ALJ failed to consider Plaintiff's ability to afford treatment at this time. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). At the May 4, 2016 hearing, Plaintiff testified that while she had insurance during this time, she still had limited funds to seek treatment. Tr. 57. Additionally, the record contains a January 18, 2011 counseling session in which Plaintiff presented with injuries to her hands and stated that her spouse refused to allow her to seek treatment due to the cost. Tr. 504. The Ninth Circuit has held that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (*quoting Blankenship v. Bowen*, 874 F.2d 1116, 1124 (9th Cir. 1989)). As such, the ALJ's rejection of Plaintiff's testimony due to lack of counseling is not legally sufficient.

The ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's statements from the May 4, 2016 hearing. Therefore, upon remand the ALJ will readdress Plaintiff's symptom statements in full.

**REMEDY**

The decision whether to remand for further proceedings or reverse and

award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to supplement the record with the outstanding medical evidence referenced above and the transcript from the July 7, 2015 hearing. Additionally, the ALJ will readdress the opinion evidence in the file and the reliability of Plaintiff's symptom statements. The ALJ will call a medical expert and a vocational expert to testify at a remand hearing and make a new determination addressing steps one through five.

**CONCLUSION**

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional

proceedings consistent with this Order.

      3.     Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED September 5, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE